IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEBANON SCHOOL DISTRICT,<br>　　　Plaintiff<br><br>v.<br><br>THE NETHERLANDS INSURANCE<br>COMPANY, et al.,<br>　　　Defendants | :<br>:<br>:　No. 1:12-cv-988<br>:<br>:　(Chief Judge Kane)<br>:<br>:<br>:<br>:<br>: |

# MEMORANDUM

Before the Court are the parties' cross motions for judgment on the pleadings concerning Defendants the Netherlands Insurance Company and its associated insurance companies' duty to defend and indemnify Plaintiff Lebanon School District for its costs arising from defending a civil rights class action. (Doc. Nos. 11, 15.) Both motions have been briefed and are now ripe for disposition. For the reasons that follow, the Court will grant Defendants' motion, and deny Plaintiff's motion.

## I.　BACKGROUND

This insurance coverage dispute stems from a civil rights class action also pending in this Court, Rivera v. Lebanon School District, No. 11-cv-147. Following Defendants' refusal to provide insurance coverage for legal costs arising from defending the Rivera lawsuit, Plaintiff Lebanon School District filed suit in the Court of Common Pleas of Lebanon County, seeking a declaratory judgment and damages for breach of contract against Defendants. Defendants subsequently removed the action to this Court based on diversity jurisdiction. (Doc. No. 1.)

### A.　Scope of Insurance Coverage

Under the terms of the insurance policy, Defendants have a duty to defend Plaintiff in

1

any suit seeking "loss" because of a "wrongful act." (Doc. No. 12-1 at 155-156.) "Loss" is defined as "monetary damages, judgments (including prejudgment interest awarded against the insured on that part of the judgment paid by us), or settlements." (Id. at 179.) Although "wrongful act" is expansively defined as "any actual or alleged act, breach of duty, neglect, error, admission, misstatement, or misleading statement committed by the insured, or by any person for whose actions the insured is legally liable, while in the course of performing 'educational institution' duties," the coverage is limited to "'wrongful acts' to which the insurance applies." (Id. at 156, 171.) In other words, the "wrongful act" must be otherwise covered under the policy in order to trigger Defendants' duty to defend. (Id. at 156.)

The policy also contains a "Law Enforcement Professional Liability" exclusion, which applies to the School Leaders Errors and Omissions (SLEO) Omnibus Coverage and the Commercial General Liability Coverage provisions of the policy. Under the exclusion, Plaintiff is precluded from coverage for any claim arising out of "law enforcement activities," which are defined as activities within the scope of the school's law enforcement personnel's authorized duties. (Id. at 153, 181.) The SLEO Omnibus Coverage also contains an "Illegal Profit or Advantage" exclusion, which precludes coverage for claims arising out of wrongful acts that result in profit to the insured to which it was not otherwise legally entitled. (Id. at 189.)

### B. Rivera v. Lebanon School District Lawsuit

The plaintiffs in the Rivera lawsuit, parents of children attending school in the Lebanon School District, filed suit against Plaintiff Lebanon School District on January 20, 2011. Rivera v. Lebanon School District, No. 11-cv-147 (Doc. No. 1.). In their complaint, the plaintiffs allege that during the period between the start of the 2004-05 school year and the end of the 2008-09

2

school year, the Lebanon School District and its officials sought truancy fines that exceeded the amount allowable under Section 13-1333(a)(1) of the Pennsylvania Public School Code of 1949, as amended, 24 P.S. § 13-1333(a)(1). (Id. ¶ 15.) The Rivera plaintiffs further allege that after the Pennsylvania chapter of the National Association for the Advancement of Colored People (PA-NAACP) confronted the Lebanon School District in 2009 about the excessive truancy fines, the school district colluded with the magisterial district courts to selectively adjust unpaid truancy fines in excess of Section 13-1333(a)(1), but chose not to adjust any excessive truancy fines that had already been paid in full. (Id. ¶ 20.) The plaintiffs argue that the school district's selective adjustment of certain excessive truancy fines violated the Equal Protection Clause of the United States Constitution. The Rivera plaintiffs also maintain that the school district should reimburse any plaintiffs that paid excessive truancy fines. (Id. ¶¶ 35-39.)

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(c), a moving party is entitled to judgment on the pleadings if she can show that the non-moving party would not be entitled to relief under any set of facts that could be proven consistent with the allegations of the complaint. Core States Bank v. Huls Am., Inc., 176 F.3d 187, 193 (3d Cir. 1999). When considering a motion for judgment on the pleadings, the facts as presented in the pleadings and the inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005).

The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, provides a remedy that may be used by the federal courts in certain circumstances. The statute provides that a court "may declare the rights . . . of any interested party." 28 U.S.C. § 2201(a). Jurisdiction conferred by

this act is discretionary and the district courts are under no compulsion to exercise it. Atl. Mut. Ins. Co. v. Gula, 84 F. App'x. 173, 174 (3d Cir. 2003) (citation and quotation marks omitted).

## III. DISCUSSION

This case is before the Court on diversity jurisdiction. (Doc. No. 1.) Federal courts sitting in diversity must apply state substantive law and federal procedural law. Robertson v. Allied Signal, Inc., 914 F.2d 360, 378 (3d Cir. 1990). Under Pennsylvania law, an insurer may seek a declaratory judgment with respect to the obligations of the parties under an insurance contract, including the question of whether the insurer has a duty to defend or indemnify a party making a claim under the policy. Gen. Accident Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997). The interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court. Nationwide Mut. Ins. Co. v. CPB Int'l, Inc., 562 F.3d 591, 595 (3d Cir. 2009); 401 Fourth Street v. Investors Ins. Grp., 879 A.2d 166, 170 (Pa. 2005).

An insurer's duty to defend, which requires the insurer to cover the costs of defending the insured against a lawsuit, is separate and distinct from the duty to indemnify an insured. Key Handling Sys., Inc. v. Workers' Comp. Appeal Bd., 729 A.2d 109, 116 (Pa. Commw. Ct. 1999); see also Specialty Surfaces Int'l., Inc. v. Cont'l Cas. Co., 609 F.3d 223, 237-38 (3d Cir. 2010). An insurance company's duty to defend a suit brought against an insured is determined solely on the basis of the allegations of the complaint in the underlying action. Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Comm. Union Ins. Co., 908 A.2d 888, 896 (Pa. 2006). If a single claim in a multi-claim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the plaintiff could recover on a covered claim. Erie Ins. Exch. v. Transam. Ins.

Co., 533 A.2d 1363, 1368 (Pa. 1987). However, an insurer does not have a duty to defend when it is apparent on the face of the complaint that none of the injuries fall within the purview of the policy. Peerless Ins. Co. v. Brooks Sys. Corp., 617 F. Supp. 2d 348, 356 (E.D.Pa. 2008).

When determining the insurer's duty to defend, the court errs if it considers any pleadings or evidence apart from the plaintiff's complaint in the underlying action. Kvaerner, 908 A.2d at 896 (referring to the "well-reasoned and long-standing rule that an insurer's duty to defend is triggered, if at all, by the factual averments in the complaint itself"); see also State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 108 n.3 (3d Cir. 2009) (determining the duty to defend solely from the allegations in the insured's complaint, although discovery had taken place in which "more germane facts" may have emerged); Nationwide Mut. Fire Ins. Co. v. Malofiy, 2011 WL 1050050, No. 10-2410 at *2 (E.D. Pa. March 22, 2011) (despite "disputed facts," the court was limited to the "four corners" of the complaint in the underlying action when determining the duty to defend). Under Pennsylvania law, the particular cause of action alleged is not determinative of whether an insurer's duty to defend has been triggered; instead, the court must focus solely on the factual averments contained in the complaint itself. Mut. Benefit Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999).

Determining whether an insurer has a duty to defend an insured is a two-step process. First, the court must ascertain the scope of coverage under the policy. Britamco Underwriters, Inc. v. Grzeskiewicz, 639 A.2d 1208 (Pa. 1994). Second, the court must examine the underlying complaint to determine whether the allegations set forth trigger coverage under the terms of the policy. Kvaerner, 908 A.2d at 897. In making this determination, the court must solely rely on the allegations of the complaint, which are to be taken as true and liberally construed in favor of

the insured.  Biboroash v. Transam. Ins. Co., 603 A.2d 1050, 1052 (Pa. 1992).  Moreover, when a defendant insurance company asserts that a policy exclusion relieves it of the duty to defend a claim against its insured, the defendant bears the burden of proving that such exclusion is applicable under the circumstances.  Erie Ins. Exch., 553 A.2d at 1363.

### A. Duty to Defend

Under the terms of the SLEO Omnibus Coverage Clause, Defendants have a duty to defend Plaintiff in the event of a "loss" resulting from a "wrongful act."  (Doc. No. 12-1 at 156.)  As defined in the policy, a "loss" means "monetary damages, judgments (including prejudgment interest awarded against the insured on that part of the judgment paid by us), or settlements."  (Id. at 179.)  "Loss" does not include "[c]ost of compliance with any injunctive or non-monetary relief action," or legal fees when "solely injunctive or other non-monetary relief is sought."  (Id.)  "Wrongful act" as defined in the policy means "any actual or alleged act, breach of duty, neglect, error . . . committed by the insured, or by any person for whose actions the insured is legally liable, while in the course of performing educational institution duties."  (Id. at 171.)  As a result, any duty to defend could only have arisen in the context of a lawsuit that sought, in whole or in part, legal relief or compensatory damages.

Defendants argue that their duty to defend Plaintiff is not triggered because the Rivera plaintiffs exclusively seek declaratory and injunctive relief and restitution of excessive truancy fines, and therefore Plaintiff has not suffered a loss under the terms of the policy.  (Doc. No. 12 at 12.)  In response, Plaintiff argues that the Rivera complaint contains due process and equal protection allegations that fall within the definition of a "loss."  Plaintiff also asserts that because the Rivera plaintiffs request that the Lebanon School District develop truancy elimination plans

6

for each student, fund truancy elimination programs, and expend resources locating class members, these requests for relief constitute a "loss" and therefore Defendants' duty to defend Plaintiff is triggered. (Doc. No. 16 at 10.)

Legal damages, generally framed as compensatory or punitive damages, are available in a Section 1983 action when they have been sought by the parties. Carey v. Piphus, 435 U.S. 247, 266 (1978); see also Lakaris v. Thorburgh, 733 F.2d 260, 263 (3d Cir. 1984) ("[A] claim for compensatory and punitive damages is a legal claim."). In contrast, a judicial remedy requiring one party to pay money to another is not sufficient to characterize the requested relief as legal damages. Bowen v. Mass., 487 U.S. 879, 893 (1988); see also Maryland Cas. Co. v. Armco, Inc., 822 F.2d 1348, 1352 (4th Cir. 1987) ("Damages, as distinguished from claims for injunctive or restitutionary relief, include only payments to third persons when those persons have a legal claim for damages.") (citation and quotation marks omitted). Moreover, praying for "any other relief" that the court may order does not convert an otherwise equitable claim for relief into a prayer for legal damages. Lewis v. Hyland, 554 F.2d 93, 103 (3d Cir. 1977). Pennsylvania courts are in accord. See Blackman v. Katz, 568 A.2d 642, 645 (Pa. Super. Ct. 1990) (distinguishing between the equitable relief encompassed by directing one party to account for monies received from unlawful solicitation, and the "legal remedy which requires that [he] pay monetary damages for loss of business and goodwill" as the result of the unlawful solicitation).

The Court finds that the relief sought in the Rivera complaint does not constitute a loss for the purposes of triggering Defendants' duty to defend under the policy. The Rivera complaint is captioned: "Class Action for Declaratory and Injunctive Relief and for Restitution of Illegal Truancy Fines Retained By the Lebanon School District." Rivera, et al. v. Lebanon

School District, No. 11-cv-1147 (Doc. No. 1 at 2.) Nowhere in the complaint do the plaintiffs seek legal damages; instead, they only "seek[] declaratory and injunctive relief on behalf of those persons who are being arbitrarily discriminated against by the School District . . . [and] declaratory and injunctive relief for violations of the Pennsylvania Constitution and Public School Code and equitable restitution of the illegal fines paid to the District." (Id. at 3-4.) Although compensatory and punitive damages are available in a Section 1983 action, the Rivera plaintiffs do not seek such damages. Because Plaintiff seeks coverage for "costs of compliance with any injunctive or non-monetary relief action" and "'legal fees' when solely injunctive or other non-monetary relief is sought," neither of which qualify as a "loss" under the terms of the policy, the Court finds that Defendants do not have a duty to defend Plaintiff.

    **B.**    **Exclusions**

Even were Defendants' duty to defend Plaintiff triggered under the SLEO Omnibus Coverage clause, the scope of that duty is limited to "wrongful acts to which this insurance applies." (Doc. No. 12-1 at 156.) Thus, Defendants must defend Plaintiff only if the underlying allegations of the complaint are not otherwise excluded from coverage. Under the terms of the policy, the "Law Enforcement Professional Liability" exclusion as applied to both the SLEO Omnibus Coverage Clause and the Commercial General Liability Coverage could negate Defendants' duty to defend,[1] as could the "Illegal Profit or Advantage Exclusion" as applied to

---

[1] Defendants also assert that Plaintiff is precluded from seeking coverage under the Commercial General Liability (CGL) package of coverage because the underlying claim does not set forth allegations constituting "bodily injury," "property damage," or "personal and advertising injury." (Doc. No. 12 at 14.) Plaintiff does not respond to these arguments in its brief in opposition. As Defendants' duty to defend is not triggered under the SLEO Omnibus Coverage Clause, and is otherwise precluded by the "Law Enforcement Professional Liability" and "Illegal Profit or Advantage" exclusions, the Court need not address this argument.

8

the SLEO Omnibus Coverage Clause.

### 1.     Law Enforcement Professional Liability Exclusion

The insurance policy contains a "Law Enforcement Professional Liability" exclusion that applies to both the SLEO Omnibus Coverage and Commercial General Liability Coverage. Under the terms of the exclusion, any claim "arising out of" the performance of "law enforcement activities" by the insured or by any person for whose acts the insured was legally liable is not covered under the policy. (Id. at 181.) For the purposes of the exclusion, "law enforcement activities" are defined as "activities, services, advice or instruction that are within the scope of the authorized duties of the educational institution's law enforcement or security guard personnel." (Id.)

Defendants argue that Robert Bowman, acting as attendance officer for the school district, meets the definition of law enforcement personnel as framed in the policy because an attendance officer is invested with "full police power" under 24 P.S. § 1341(a) to enforce the compulsory school attendance laws. (Doc. No. 12 at 7-8.) Moreover, Defendants contend that because the Rivera allegations concern district officials' improper issuing of truancy citations, the plaintiffs' equal protection claims concerning the selective adjustment of truancy fines "arise out of" these law enforcement activities. (Id. at 9.)

In response, Plaintiff claims that Defendants' analysis is flawed because the civil rights complaint does not allege that Mr. Bowman directed the campaign of intensive use of truancy citations and excessive fines, but, rather, only that the campaign coincided with his appointment. (Doc. No. 16 at 11.) Thus, Plaintiff argues that Mr. Bowman's actions, as alleged in the complaint, do not constitute law enforcement activities because they were not undertaken at the

9

direction of law enforcement personnel. Second, Plaintiff disputes Defendants' legal analysis of the phrase "arising out of" when used in the context of the policy, claiming that Defendants cited cases irrelevant to the type of policy exclusion presented in this case. (Id.)

When determining an insurance company's duty to defend or indemnify the insured, courts have interpreted the phrase "law enforcement activities" as broadly encompassing impropriety or negligence by law enforcement officers in the course of their duties. Clarendon Nat'l Ins. Co. v. City of York, 121 F. App'x 940, 943-44 (3d Cir. 2005); see also W. World Ins. Co. v. Reliance Ins. Co., 892 F. Supp. 659 (M.D. Pa. 1995). A law enforcement officer's failure to follow protocols or established policies does not necessarily mean that he is acting outside the scope of his law enforcement function.[2] Clarendon, 121 F. App'x at 943.

Under Pennsylvania law, the phrase "arising out of" in the context of insurance coverage disputes should be construed as "causally connected with, not proximately caused by," and this expansive reading has been applied in various insurance law settings. Allstate Prop. & Cas. Ins. Co. v. Squires, 667 F.3d 388, 391 (3d Cir. 2012); see also Murdock v. Dinsmoor, 892 F.2d 7, 8 (1st Cir. 1989) ("arising out of" should be broadly read to cover activities "originating from, growing out of, flowing from, incident to, or having connection with" the underlying conduct). In other words, "but for" causation generally governs a court's interpretation of "arising out of" when used in an insurance policy. Allstate Prop. & Cas. Ins. Co., 667 F.3d at 391-92 (citing Mfr. Cas. Ins. Co. v. Goodville Mut. Cas. Co., 170 A.2d 571. 573 (Pa. 1961)).

Looking solely at the allegations of the complaint, the Rivera plaintiffs allege that the

---

[2] The United States Court of Appeals for the Third Circuit has noted that the term "law enforcement activities" should not be narrowly read because when a lawsuit arises from law enforcement action, the complaint usually alleges that the law enforcement official was not acting in conformity with her law enforcement function. Clarendon, 121 F. App'x at 943.

10

school district filed more than twelve-hundred (1200) truancy citations for violations of Pennsylvania's compulsory school attendance law each year starting in the 2004-05 school year, and "[t]he School District began the campaign of intensive use of court citations and excessive fines for truancy in the 2004-05 school year with the appointment of Robert Bowman as attendance officer, with the fines increasing each school year through 2008-09." Rivera v. Lebanon School District, No. 11-cv-147, Doc. No. 1 ¶¶ 9-10. The Rivera plaintiffs further allege that "[d]istrict officials serve the summonses, prosecute the truancies, provide the court with information on the students' attendance, and make recommendations on punishment." (Id. ¶ 12.) Under the terms of the exclusion, which defines law enforcement activities as "activities . . . within the scope of the authorized duties of the 'educational institution's' law enforcement or security guard personnel" (Doc. No. 12-1 at 181), the Court finds the allegations concern "law enforcement activities," as they describe activities within the scope of the district officials' duties to enforce the compulsory school attendance law.

The Court next turns to whether the claims in the Rivera complaint "arise out of" the performance of "law enforcement activities." The Rivera complaint alleges that the school district violated the Equal Protection Clause of the United States Constitution when it colluded with the magisterial district courts to selectively reduce only unpaid excessive truancy fines, while retaining any paid truancy fines. (Id. ¶¶ 18-19.) Under the but-for formulation of "arising out of" adopted by the Pennsylvania courts, the Court finds the alleged selective adjustment of these fines would not have occurred but for the school district's alleged seeking of excessive fines through filing improper truancy citations. ( Id. ¶¶ 9-12.) The Court thus concludes that the Rivera complaint "arises out of" law enforcement activities as defined in the exclusion. Plaintiff

is therefore precluded from coverage under the "Law Enforcement Professional Liability" exclusion as applied to both the SLEO Omnibus Coverage and the Commercial General Liability Coverage.

### 2. Illegal Profit or Advantage Exclusion

Plaintiff's policy of SLEO Omnibus Coverage contains an "Illegal Profit or Advantage Exclusion." (Doc. No. 12-1 at 189.) Under the terms of the exclusion, the SLEO Omnibus Coverage does not extend to any insured who "commits a 'wrongful act' that gains . . . . a profit or advantage of which the insured or other person or organization was not legally entitled." (Id.) "Wrongful act" is defined as "any actual or alleged act, breach of duty, neglect, error, omission, misstatement, or misleading statement committed by the insured, or by any person for whose acts the insured is legally liable, while in the course of performing 'educational institution' duties." (Id. at 216.)

Defendants assert that Plaintiff is excluded from seeking coverage under this exclusion because the Rivera complaint alleges that Plaintiff retained excessive truancy fines to which it was not entitled under Section 13-1333(a)(1). (Doc. No. 12 at 13.) In response, Plaintiff argues that the allegations of the underlying complaint are focused on the "procedures used to reduce certain fines while not reducing others," and thus the underlying complaint cannot be construed as alleging that Plaintiff sought an illegal profit to which it was not entitled. (Doc. No. 16 at 15.)

Generally, an insurer must cite allegations that an insured gained illegal profit or advantage when arguing that an insured is not entitled to insurance coverage because of an illegal profit exclusion. Alstrin v. St. Paul Mercury Ins. Co., 179 F. Supp. 2d 376, 399 (D. Del. 2002). When faced with an exclusion similar to the one at issue in this case, courts have

distinguished between an insured seeking a profit or gain that is illegal, which will be precluded, and an insured engaging in illegal acts that incidentally result in profit to the insured. Id. at 400.

In the Rivera complaint, the plaintiffs allege that the school district "sought and obtained" truancy fines in excess of the amount allowable by Section 13-1333(a)(1). Rivera et al. v. Lebanon School District, No. 11-cv-147 (Doc. No. 1 ¶¶ 13-15.) The complaint further alleges that although the school district has not reimbursed any individuals that paid excessive fines in full, it adjusted any excessive fines that were unpaid to the amount allowable by law. (Id. ¶ 16.) The Court therefore rejects Plaintiff's argument that the alleged selective reduction did not lead to the school district obtaining a profit it was not legally entitled to; selectively reducing unpaid truancy fines while retaining excessive paid fines would enable Plaintiff to retain profit it would not be entitled to under Section 13-1333(a)(1). Without the selective adjustment of only unpaid fines, Plaintiff would not retain fines in excess of the law. Thus, the Court finds that the Rivera allegations support a finding that Plaintiff is precluded from seeking coverage under the "Illegal Profit or Advantage Exclusion."

### C. Duty to Indemnify Plaintiff

Defendants also assert that they do not owe Plaintiff a duty to indemnify it in the Rivera action. (Doc. No. 12 at 15.) Under Pennsylvania law, an insurer's duty to indemnify arises only when the insured is held liable for a claim that is actually covered by the policy. Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am., 581 F. Supp. 2d 677, 694-95 (W.D. Pa. 2008). A finding that the insured does not have a duty to defend under the policy will preclude the existence of a duty to indemnify the insured. Kvaerner, 908 A.2d at 896 n.7 ("[B]ecause the duty to defend is broader, a finding that it is not present will also preclude a duty to

indemnify."); Scopel v. Donegal Mut. Ins. Co., 698 A.2d 602, 605 (Pa. Super. Ct. 1997). The Court has found that Defendants are not obligated to defend Plaintiff in the Rivera complaint under the terms of the policy. Accordingly, the Court also finds that Defendants are not obligated to indemnify Plaintiff for its legal costs arising from defending that action.

## IV. CONCLUSION

Defendants are not obligated to defend Plaintiff in the Rivera lawsuit, because the complaint exclusively seeks injunctive and declaratory relief. Defendants' duty to defend Plaintiff was limited to suits for monetary damages, not the costs of complying with equitable remedies. However, even if Defendants' duty to defend Plaintiff were triggered, Plaintiff is still precluded from seeking coverage because of the policy's "Law Enforcement Professional Liability" and "Illegal Profit or Advantage" exclusions. Furthermore, because Defendants' duty to defend Plaintiff was not triggered, the Court must necessarily find that Defendants are not obligated to indemnify Plaintiff.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LEBANON SCHOOL DISTRICT,** : <br> Plaintiff : <br> : **No. 1:12-cv-988** <br> v. : <br> : **(Chief Judge Kane)** <br> **THE NETHERLANDS INSURANCE** : <br> **COMPANY, OHIO CASUALTY, et al.,** : <br> Defendants : <br> : | |

## ORDER

**AND NOW,** on this 25th day of January 2013, for the reasons set forth in the foregoing memorandum, **IT IS HEREBY ORDERED THAT** Defendants' motion for judgment on the pleadings is **GRANTED**. Plaintiff's motion for judgment on the pleadings (Doc. No. 15) is **DENIED**. **IT IS FURTHER ORDERED THAT** judgment is entered in favor of Defendants the Netherlands Insurance Company, Ohio Casualty, member of Liberty Mutual Group, and the nominal parties, Rosa Rivera, Omary Rodriguz-Fuentes, Madeline Echevarria, Lenora Hummel, and the PA-NAACP, declaring that Defendants are not obligated to defend nor indemnify Plaintiff under policy number CPB 9601085 for Plaintiff's costs arising from Rivera v. Lebanon School District, No. 11-cv-147. Judgment is entered against Plaintiff Lebanon School District. The Clerk of Court is directed to close the case.

                                                S/ Yvette Kane
                                                Yvette Kane, Chief Judge
                                                United States District Court
                                                Middle District of Pennsylvania